**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>OLD SOUTH TRADING CO., LLC, BRENDAN H. CHURCH, and EDWIN N. CHURCH,<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff, the United States Securities and Exchange Commission ("SEC"), for its Complaint against defendants Old South Trading Co., LLC ("Old South"), Brendan H. Church ("Brendan Church"), and Edwin N. "Chuck" Church ("Chuck Church") alleges:

**SUMMARY**

1.      This is a civil enforcement action against Brendan Church, his father Chuck Church (together with Brendan Church, "the Churches"), and Old South for violations of the registration provisions of the federal securities laws.

2.      From March 2020 until May 2022, the Churches, through Old South, a private limited liability company solely owned and controlled by Brendan Church, raised approximately $25.8 million through the unregistered offer and sale of securities, in the form of demand promissory notes, from approximately 100 investors, including several investors from South Carolina. No registration statement was in effect with respect to the sale of the promissory notes, and no exemptions from registration were applicable.

3. Chuck Church is the operator of a franchise within a fast-food restaurant chain ("Fast-Food Restaurant Chain"), and the Churches' solicitations were largely directed at fellow Fast-Food Restaurant Chain operators. The Churches solicited investments for the purpose of purchasing personal protective equipment ("PPE") during the coronavirus pandemic. Chuck Church mainly interacted with and recruited investors, and he received transaction-based compensation for doing so. Chuck Church was also an investor in Old South.

4. Old South's securities offering was never registered with the SEC and did not qualify for any exemption from registration. Consequently, investors were deprived of the critical information that a registration statement is required to provide and that enables them to make informed investment decisions.

5. As a result, investors were unaware that Old South was suffering from severe financial difficulties. In June 2022, Old South stopped making interest payments and honoring investor redemption requests, resulting in more than $11.6 million in losses to at least 79 investors. On May 18, 2023, Brendan Church voluntarily filed for Chapter 11 bankruptcy protection in an individual capacity, identifying the investors in the Old South demand promissory notes as creditors.

6. Through the acts and circumstances alleged in this Complaint, Chuck Church acted as an unregistered broker-dealer by directly offering and selling the securities through phone calls and emails in exchange for transaction-based compensation.

7. By engaging in the conduct described herein, Defendants violated Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and (c), by offering and selling securities in unregistered transactions. Defendant Chuck Church also violated

Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1), by acting as an unregistered broker-dealer.

## DEFENDANTS

8.  **Old South** was a Tennessee limited liability company with its principal place of business in Greer, South Carolina. Old South was administratively dissolved by the state of Tennessee on September 2, 2023. Old South has never been registered with the Commission in any capacity nor ever had a class of securities registered with the Commission.

9.  **Brendan Church**, age 42, is a resident of Simpsonville, South Carolina, and served as the President and Owner of Old South. Brendan Church does not hold any securities licenses and has never been registered with the Commission in any capacity.

10. **Chuck Church**, age 64, is a resident of Duncan, South Carolina, and solicited investments in Old South through fellow restaurant operators within his Fast-Food Restaurant Chain. Chuck Church does not hold any securities licenses and has never been registered with the Commission in any capacity.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

12. The Court has personal jurisdiction over Defendants, and venue is proper in this judicial district, because the Churches reside in this district, Old South's principal place of business is in this district, and many of the acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this district.

13. In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of

interstate commerce, the means and instruments of transportation or communication in interstate commerce, or the mails, including soliciting investors located in other states and obtaining funds from those investors through wire transfers in interstate commerce.

**FACTS**

**I.     Old South's Offering of Securities**

    **A.     Brendan Church's and Chuck Church's Plan to Solicit Investments in Old South**

14.     Beginning in early 2020, Brendan Church used Old South to buy and sell Personal Protective Equipment ("PPE"). To raise funds needed to purchase PPE, Brendan Church and his father, Chuck Church (collectively, "the Churches"), offered and sold unregistered securities in the form of high yield demand promissory notes issued by Old South.

15.     The Churches primarily solicited investments from Chuck Church's fellow franchise owners within the same Fast-Food Restaurant Chain, known as "operators," as well as friends and family members of the Fast-Food Restaurant Chain operators.

16.     Old South had legitimate business operations during the COVID-19 pandemic: between March 2020 and December 2023, Old South sold more than $60 million in PPE, yet it was operating at a loss. The cause for Old South's financial difficulties included: (1) excess inventory that it was unable to sell; (2) large interest payments that it was obliged to make to promissory note investors; and (3) significant compensation payments to Brendan Church.

17.     Ultimately, Old South's financial difficulties resulted in its inability to pay back investors in the promissory notes, leaving at least 79 investors with over $11.6 million in losses. On May 18, 2023, Brendan Church voluntarily filed for Chapter 11 bankruptcy protection in an individual capacity, identifying the investors in the Old South demand promissory notes as creditors.

B. **The Old South Demand Promissory Notes**

18. In March 2020, Old South received a multimillion-dollar PPE purchase order from a large supplier of products to hospitals and other businesses. Old South did not have sufficient cash funds to purchase PPE to deliver to the supplier, and as a result, issued high yield demand promissory notes to raise funds.

19. The notes were each titled "Demand Promissory Note," and issued by Old South. The demand promissory notes were instruments that were securities.

20. No registration statement was filed for the Old South demand promissory notes, and no exemptions from registration were applicable.

21. On behalf of Old South, which he solely owned and controlled, Brendan Church signed each demand promissory note. Brendan Church also authorized the interest payments to investors, as well as investor redemption requests, through bank accounts that he controlled.

22. Chuck Church participated in the dissemination of the proposed Old South demand promissory notes.

23. Investors purchased the Old South demand promissory notes for the purpose of earning a profit in the form of interest payments.

24. When initially issued, in early 2020, the Old South demand promissory notes yielded 10% in interest per month, or 120% per year.

25. In August 2020, the Churches unilaterally reduced the interest rate on the Old South notes to 2% (although certain investors were paid 2.5% interest per month).

26. With respect to the notes yielding 2% per month, the Old South notes provided: "INTEREST RATE. Interest shall accrue on the unpaid principal balance of this Note at that

rate of interest which is two percentage (2.0%), (collectively the 'Interest Rate') per Month and as adjusted from time to time."

27.     No clause of the demand promissory notes provided for any collateral or any other form of security interest in the event that Old South was unable to repay the notes.

28.     As explained by Chuck Church to an Old South investor in a May 12, 2020 email, the notes were not insured by the Federal Deposit Insurance Corporation ("FDIC") and "not backed by FDIC like a bank loan" – nor otherwise subject to regulation under the federal banking laws.

29.     The demand promissory notes lacked a defined term, and investors understood them to have no fixed maturity date. Many of the demand promissory notes expressly did not have any defined duration, and instead listed "TBD" as the maturity date. For example, various Old South notes included the following language: "REPAYMENT. All principal and interest with respect to this Note shall be payable on demand; however if no demand is made this Note shall mature on **TBD**." (Emphasis in original.) Other notes listed the maturity date as "TBD 2021," or similar undefined maturity dates.

30.     Likewise, Brendan Church confirmed in August 2021 in sworn testimony in an arbitration proceeding involving an Old South PPE customer that the notes were "open-ended," without any defined maturity:

> Q. [D]id the promissory notes, the terms of those, did they have definitive terms or was it until the – was the principal due to be paid back at a date certain?
>
> A. No, it's – it's open-ended, it's just like as long as you wanted to stay in or we need you.

31.     From other email communications, investors similarly understood that the notes did not have defined maturity dates. For example:

6

    a.    In a May 12, 2020 email soliciting an investor, Chuck Church told the investor: "You can get out at any time with a 2-3 week notice where all of your money plus prorated interest will be returned."

    b.    In an August 19, 2020 Facebook message to the Fast-Food Restaurant Chain Operator Forum, soliciting investments in Old South, Chuck Church wrote: "Interest will be sent monthly via ACH with a 'get out' option at any time with a 2-3 week notice."

    c.    In a November 10, 2020 email, Chuck Church told an investor that the duration of the notes were "undetermined": "The length is undetermined, but you are able to get out at any time with a 2-3 week notice. Of course Old South could eventually decide to pay back the loans, but there's no decision to do that this year."

32.    Brendan Church, Chuck Church, and Old South repeatedly and consistently told noteholders that the demand promissory notes were "investments" and that noteholders were "investors" in Old South, and investors understood themselves to be investors in Old South. For example:

    a.    In an August 7, 2020 blast email to Old South investors, with the subject line "10% loan," Chuck Church wrote: "Good Afternoon *Investors*, . . . [L]et me thank each one of you again for what continues to be a blessing (*your investment*) in helping Old South Trading co., LLC (Brendan Church & Team) supply masks and other PPE to all those who need it!" (Emphasis added.)

    b.    On January 29, 2021, Brendan Church wrote to an investor: "Yes you can *invest* more…We now have long term contracts and just became a distributor for over 600 brands. This could last for years." (Emphasis added)

    c.    On September 8, 2021, Brendan Church emailed an investor in Old South, with the subject "Re: *Investor* email," regarding a potential additional investment: "Business is booming, but I can't be sure if we will need *your investment* next year or not. I hate to leave you in limbo right now, but there are just too many variables that could change last minute. I will definitely reach out to you if something should change quickly. Thank you so much for your trust in OS [Old South]. We literally couldn't have done it without you! Thank you so much from the bottom of my heart!" (Emphasis added)

7

      d.    In a December 23, 2021 blast email to Old South noteholders, Brendan Church opened the email by addressing it to ***"Precious Investors"*** (emphasis added).

33. Investors in the Old South notes were passive and had no role in the management of Old South, and relied entirely on the efforts of the Churches to operate the business. Investors purchased notes based on the trust that they placed in the Churches, based on minimal or no financial information.

### C. Brendan Church and Chuck Church Solicited Investments for Old South

34. To solicit investments, in addition to directly emailing prospective investors, Chuck Church posted on a Facebook group for Fast-Food Restaurant Chain operators, titled "[Fast-Food Restaurant Chain] Operator Forum."

35. The Fast-Food Restaurant Chain Operator Forum on Facebook included approximately 1,700 individuals, primarily Fast-Food Restaurant Chain operators, across the United States. The Fast-Food Restaurant Chain Operator Forum included unaccredited investors, including new operators opening Fast-Food Restaurant Chain restaurants.

36. Chuck Church did not have prior relationships with the vast majority of the Fast-Food Restaurant Chain operators on the Facebook forum, and, consequently, his solicitations for investments were the first messages that many Old South investors had received from either Chuck Church or Brendan Church.

37. As such, Chuck Church engaged in the general solicitation of investors. For example:

      a.    On April 8, 2020, Chuck Church posted to the Fast-Food Restaurant Chain Operator Forum: "An update this morning, collectively you have loaned approximately $3 million, with another $1 million coming. Please share with other operators. My prayer is that we get the masks to hospitals ASAP and put money in the hands of operators where it's much needed knowing it will be used for good! Let me know if you're interested in 10% per month interest."

8

    b.    On May 11, 2020, Chuck Church posted to the Fast-Food Restaurant Chain Operator Forum: "Good Morning Operators, An update about the investment/loan opportunity.  The demand for masks, gloves and other PPE is still great.  We are moving the limit from $5 million to $10 million, so there is still room for more investors/additional funding.  I personally am making sure all Operators are taken care of.  We sent over $250k in profit checks last month and this month will probably be over $500k.  If interested, text me your email and phone number . . . . If you are already loaning money, tell a fellow operator about it."  Chuck Church added a follow-up to the message:  "This loan pays 10% per Month!"

    c.    On August 19, 2020, Chuck Church posted a message to the Fast-Food Restaurant Chain Operator Forum: "Good Afternoon Operators, I have an investment/loan opportunity.  Many [Fast-Food Restaurant Chain] operators have invested/loaned money to my son's company Old South Trading Co., LLC that wholesales PPE supplies.  They currently have room for $2-3 million in funds that will earn 2% monthly or 24% APR.  Interest will be sent monthly via ACH with a 'get out' option at any time with a 2-3 week notice.  If interested, text or email me your email and phone number . . . ."

    d.    On May 26, 2021, Chuck Church posted to the Fast-Food Restaurant Chain Operator Forum: "Just a heads up, there's some additional room for anyone wanting to invest/loan in Old South Trading Co., LLC.  We have a few operators needing funds which opens up some room for additional investments.  Let us know if you're interested via email . . . or text me . . . ."

38.    Although Chuck Church primarily interacted with prospective investors, occasionally Brendan Church answered prospective investors' questions in connection with their solicitations.

**D.      Total Investments in Old South and Sale of Notes to Unaccredited Investors**

39.     In total, approximately 100 investors – including friends and family of Brendan and Chuck Church, and several individuals located in South Carolina – purchased Old South demand promissory notes, for a total of more than $25 million.

40.     Investments were solicited from Fast-Food Restaurant Chain operators and other persons across the U.S., and Old South notes were purchased from investors in South Carolina, Missouri, Illinois, Wisconsin, Georgia, and other states.

41.     Many investors were unsophisticated in financial matters, including in conducting due diligence into investments in private and unregistered businesses. Instead, investors relied almost entirely on the trust that they placed in both Chuck Church—a fellow Fast-Food Restaurant Chain operator —and his son, Brendan Church.

**1.      Failure to Verify Whether Investors Were Accredited**

42.     Neither Chuck Church, Brendan Church, nor anyone affiliated with Old South took any steps to verify that purchasers of Old South notes were accredited investors.

43.     In fact, Old South notes were offered to unaccredited investors – including through general solicitation on Facebook, and solicitation of family members of Fast-Food Restaurant Chain operators – and unaccredited investors invested in the Old South notes.

44.     As a result of Chuck Church's general solicitation via the Fast-Food Restaurant Chain Operator Forum, the mother of one Fast-Food Restaurant Chain operator, a senior citizen who was not an accredited investor, expressed an interest in investing in Old South notes. In or around August 2020, prior to her investment in Old South demand promissory notes, the investor's son affirmatively informed Chuck Church that his mother was <u>not</u> an accredited investor.

45.    Another Fast-Food Restaurant Chain operator, who Chuck Church likewise solicited via the Fast-Food Restaurant Chain Operator Forum, invested in Old South demand promissory notes via a limited liability company. The limited liability company, however, did not meet the requirements to be an accredited investor because it included as members unaccredited investors, including the children of the Fast-Food Restaurant Chain operator.

46.    A June 22, 2022 email from an investor to the Churches illustrates that the investor's father, who also had invested in Old South, was not an accredited investor: "Brendan, I'd like to know if my entity . . . can buy my dad's $50k note from him, and end his involvement by assuming any role and/or past & present responsibilities & liabilities he may have concerning the loan he made. Dad's 83 years old; has health issues; his highest earning year was 1996 at around $55k working for a textile mill; his highest education was a high school degree; and this is the first time he has ever been involved in thinking about legal matters."

### 2.    Chuck Church's Solicitation Agreement for 2% Commissions

47.    Chuck Church solicited investments pursuant to an agreement with Brendan Church that he [Chuck Church] would receive 2% interest <u>per month</u> on <u>all</u> investments that he brought into Old South, which constitutes transaction-based compensation.

48.    Chuck Church described this compensation agreement in a June 29, 2020 email to an Old South bookkeeper (cc'ing Brendan Church and another individual): "My part of the deal for getting the operators involved [i.e., investing with Old South] and handling all the loans, paperwork and correspondence with them was 2%."

49.    A spreadsheet initially created by Chuck Church on March 31, 2020, and subsequently updated, reflected commission payments totaling nearly $540,000 owed to Chuck Church. The amount of commission payments owed to Chuck Church, as reflected in the spreadsheet, are summarized in the chart below:

|  | April 2020 Total | May 2020 Total | June 2020 Total | July 2020 Total |
|---|---|---|---|---|
| **"Chuck's 2%"** | $54,267.44 | $134,318 | $199,319 | $206,025 |

50. In approximately January 2021, Chuck Church agreed to receive from Old South a new car – a 2021 GMC Yukon leased by Old South – in lieu of the commissions.

51. Old South made lease payments of up to $44,538 on the GMC Yukon from February 2021 through at least December 2023.

52. In connection with soliciting investments, Chuck Church also handled administrative aspects of the investments, including securing signed promissory notes, tracking the receipt of funds, and informing investors about interest rates and interest rate changes.

53. For example:

   a. On March 16, 2020, Chuck Church wrote to an investor: "I wanted to confirm that your investment of $65K was available to use this morning, so your start date for these funds will be today."

   b. On August 7, 2020, Chuck Church wrote to an investor about extending his investment: "all terms would be the same as the current deal, just 24% APR instead of 120%."

54. Chuck Church also made recommendations regarding the advisability of the investment. For example:

   a. On May 12, 2020, Chuck Church wrote to a Fast-Food Restaurant Chain operator that the investment was "extremely low risk" and only available "because of the volume and urgency to meet an important need."

   b. On May 15, 2020, he wrote to another operator that the investment was "through my son (Brendan), whom I trust," that it was "very low risk," and I "definitely wouldn't have gotten our operator community involved if it were risky."

12

**II.     Old South Faced Financial Difficulties and Failed to Repay Investors**

    **A.     Because of the Lack of Registration, Investors were Unaware of Old South's Financial Difficulties**

55.     Old South's offer and sale of securities were not registered. Registration is intended to assure that each person offering or selling securities gives the investing public required information about the issuer, the securities, and the transaction. With that information, investors can make informed investment decisions.

56.     Old South investors were provided with little information about the company beyond vague assurances that the company was doing well and continuing to sell PPE. These investors were not informed and were unaware, however, that the company was facing severe financial difficulties. Consequently, investors were unable to consider that information when deciding whether to invest or whether to demand the return of their principal.

    **B.     Old South Stopped Making Payments to Investors**

57.     On March 12, 2022, via email, Chuck Church informed Old South investors that their principal payments would be "frozen."

58.     On May 31, 2022, via email, the Churches informed investors that their interest payments would be reduced to 1% per month. However, no further interest payments occurred. On June 9, 2022, Brendan Church informed investors via email that interest payments would cease altogether: "Note Holders, I have been informed we won't be paying any interest this month . . . Thanks again for your support, prayers, and patience."

59. Since that time, investors have been unable to secure the return of their investments, leaving some with hundreds of thousands of dollars in losses, including retirement funds.

**FIRST CLAIM FOR RELIEF**
**Violation of Sections 5(a) and 5(c) of the Securities Act**
**(Against All Defendants)**

60. Paragraphs 1 through 59 above are re-alleged and incorporated by reference.

61. The federal securities laws require that companies disclose certain information through the registration with the SEC of the offer or sale of securities.

62. The promissory notes offered and sold by the Defendants are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 77c(a)(10)].

63. Each Defendant directly and/or indirectly offered and sold securities without a registration statement in effect, engaged in steps necessary to the public distribution of unregistered securities, and was a necessary participant in the offering of unregistered securities.

64. As a result of the conduct described above, Defendants each violated Section 5(a) of the Securities Act, which states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

65. Also as a result of the conduct described above, Defendants each violated Section 5(c) of the Securities Act, which states that it shall be unlawful for any person, directly or

indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security.

66. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### SECOND CLAIM FOR RELIEF
### Violation of Section 15(a)(1) of the Exchange Act
### (Against Defendant Edwin N. "Chuck" Church)

67. Paragraphs 1 through 59 above are re-alleged and incorporated by reference.

68. As alleged above, Defendant Chuck Church, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while not registered with the Commission as a broker or dealer or not associated with an entity registered with the Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)], which states, in part, that "[i]t shall be unlawful for any broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section."

69. By engaging in the conduct described above, Defendant Chuck Church violated, and unless restrained and enjoined is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### PRAYER FOR RELIEF

Accordingly, the SEC respectfully requests that the Court grant the following relief:

A.  Find that each of the Defendants committed the violations alleged in this Complaint;

B.  Permanently restrain and enjoin Defendants from directly or indirectly violating Section 5 of the Securities Act [15 U.S.C. §§ 77e];

C.  Permanently restrain and enjoin Defendant Chuck Church from directly or indirectly violating Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)];

D.  Permanently restrain and enjoin Defendants Brendan Church and Chuck Church, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and/or Sections 21(d)(1) and (5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and (5)], from directly or indirectly, including, but not limited to, through any entity owned or controlled by each of them, participating in the issuance, purchase, offer, or sale of any security, provided however, that such injunction shall not prevent each of them from purchasing or selling securities for each of their own personal accounts;

E.  Permanently restrain and enjoin Defendant Chuck Church pursuant to Sections 21(d)(1) and (5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and (5)], from directly or indirectly, acting as or being associated with any broker or dealer, provided however that such injunction shall not prevent Defendant Chuck Church from being a customer of a broker or dealer.  For purposes of this paragraph, a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer;

F.   Order Defendant Chuck Church to disgorge his ill-gotten gains plus prejudgment interest thereon, pursuant to Sections 21(d)(3), (5), and (7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), and (7)];

G.   Order Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and/or Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

H.   Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

I.   Grant such other and further relief as this Court may deem just, equitable, and necessary.

## JURY DEMAND

The SEC demands a trial by jury on all issues so triable.

January 17, 2025                               Respectfully submitted,

                                               ADAIR F. BOROUGHS
                                               UNITED STATES ATTORNEY

                                    By:    s/ *James C. Leventis, Jr.*
                                           James C. Leventis, Jr. (#9406)
                                           Assistant United States Attorneys
                                           1441 Main St., Suite 500
                                           Columbia, SC  29201
                                           (803) 343-3172
                                           James.Leventis@usdoj.gov

                                           *Attorney for the United States of America*

        Dean M. Conway
        James Carlson
        Securities and Exchange Commission
        100 F Street, NE
        Washington, DC 20549
        Tel:  202-551-4412
        Email:  ConwayD@sec.gov

*Attorneys for Securities and Exchange Commission*

Of Counsel:
Amy L. Friedman
Andrew M. Elliott
Jonathan C. Shapiro